UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

CHARLES LOTT,

      Plaintiff,

        v.

LIBERTY INSURANCE CORPORATION,

      Defendant.

Case No. 3:24-cv-00524-YY

OPINION AND ORDER

YOU, Magistrate Judge.

In March of 2023, approximately 16 units at a storage facility in southeast Portland were burglarized; one of the units was rented by plaintiff Charles Lott. Chief among the property taken from plaintiff's unit were suits, shoes (including a number of valuable Jordan sneakers), luggage, and a gaming console. Plaintiff reported the theft to the police and then filed a claim with defendant Liberty Insurance under his renter's insurance policy. Although there are several nuances to the dispute that arose and eventually led to this suit, the bottom line is that defendant refused to pay plaintiff's claim for the stolen property, which plaintiff had estimated was worth $20,000, because it did not believe that plaintiff had sufficiently proven that he owned the items or their value. Plaintiff believes, among other things, that several of the actions defendant took in investigating and ultimately denying his claims—such as clarifying whether the claimed items

1 – OPINION AND ORDER

were used in a business (for which plaintiff's policy only covered $250) or referring the case to its in-house Special Investigation Unit or "SIU" (which essentially investigated claims for fraud)—were not justified. According to plaintiff, these and other actions were a pretext for attempting to "run out the clock," so to speak, and prevent plaintiff from filing suit or to otherwise disguise that defendant never intended to pay plaintiff's claim for some reason.

After defendant refused to pay, plaintiff filed suit in state court in February of 2024, asserting two claims sounding in contract—breach of express contract and breach of the implied covenant of good faith and fair dealing—and a negligence claim. Not. Removal, Ex. A at 3, ECF 1. Defendant timely removed the case to this court on the basis of diversity jurisdiction. Not. Removal 3, ECF 1. In May of 2024, plaintiff accepted defendant's offer of judgment for $17,500 as to plaintiff's breach of contract claims, meaning the only remaining claim is plaintiff's negligence claim, which asserts that defendant violated various provisions of Oregon's Unfair Claim Settlement Practices Act, codified at O.R.S. 746.230. *See* Second Am. Compl. ¶¶ 36–41, ECF 31; *see also* Limited Judgment (May 16, 2024), ECF 5. This claim seeks to recover damages solely for emotional distress, and is referred to here sometimes as plaintiff's claim for negligent infliction of emotional distress or "NIED" for short. After the parties conducted discovery, the court granted plaintiff's motion for leave to amend the complaint to add a claim for punitive damages in April of 2025. *See* Minutes Proceedings (Apr. 16, 2025), ECF 30.

Currently pending are three motions for summary judgment. First, defendant has moved for partial summary judgment on plaintiff's NIED claim on the basis that plaintiff cannot establish the violation of a sufficient legally protected interest or that he suffered from severe emotional distress, both of which are necessary to sustain a claim for purely emotional distress

damages under Oregon law. ECF 40.[1] Second, defendant has moved for partial summary

judgment on the availability of punitive damages. ECF 47. And finally, plaintiff has moved for

partial summary judgment on the merits of the NIED claim, asserting that defendant wrongly

relied on three "conditions" in denying coverage for his claim and in doing so violated O.R.S.

746.230 and other state statutes applicable to insurers. ECF 49.

As will be explained more fully below, defendant's motion for summary judgment

attacking the legal sufficiency of plaintiff's NIED claim is granted, plaintiff's motion for partial

summary judgment as to the NIED claim is denied, and defendant's motion for partial summary

judgment on punitive damages is denied as moot.

## I.      Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment

if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." The party moving for summary judgment bears the

initial responsibility of informing the court of the basis for the motion and identifying portions of

the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate

the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings"

and "designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324 (citing

FED. R. CIV. P. 56(e)).

---

[1] Defendant's initial motion for summary judgment (ECF 38) was superseded by a later-filed corrected motion (ECF 40) that added defense counsel's signature that was missing from the first. The corrected motion is identical in all other respects. References here are made to the corrected motion.

The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## II.    Discussion

Under Oregon law, a plaintiff asserting a negligence claim must show that the defendant engaged in conduct that "unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff, and that that conduct in fact caused [the plaintiff] economic harm and emotional distress." *Moody v. Oregon Cmty. Credit Union*, 371 Or. 772, 783 (2023) (simplified). Physical harm, which includes "both bodily injury and property damage," is one such "protected interest" that can support a negligence claim. *Id.* at 784. As for emotional harm, "[g]enerally, . . . people do not have a legally protected interest in being free from emotional distress," and thus the Oregon Supreme Court has allowed tort claims for emotional distress in the absence of physical impact in "limited circumstances," including, for example, when the defendant "negligently causes foreseeable, serious emotional distress and also infringes some other legally protected interest." *Id.* at 784 (quoting *Philibert v. Kluser*, 360 Or. 698, 703 (2016)); *see also Hayter v. Travelers Indem. Co.*, 793 F. Supp. 3d 1283, 1291 (D. Or. 2025) (outlining Oregon law regarding claims for emotional distress).

Here, plaintiff does not assert that defendant physically harmed him; rather, plaintiff's negligence claim depends on defendant's alleged violation of O.R.S. 746.230(1), which, among other things, prevents insurers from "[m]isrepresenting facts or policy provisions in settling claims," "[r]efusing to pay claims without conducting a reasonable investigation based on all

4 – OPINION AND ORDER

available information," and "[n]ot attempting, in good faith, to promptly and equitably settle

claims in which liability has become reasonably clear." *See also* Second Am. Compl. ¶ 29, ECF

31 (setting out various provisions of O.R.S. 746.230(1)). Defendant asserts that plaintiff "has not

demonstrated the violation of a sufficient legally protected interest to give rise to liability for

emotional distress damages." Mot. Summ. J. 10, ECF 40.

Historically, courts applying Oregon law have found that a violation of O.R.S. 746.230

does not typically give rise to a tort action, or put another way, that O.R.S. 746.230 does not

create a legally protected interest separate from the underlying insurance contract to which a tort

claim can attach. *Braun-Salinas v. Am. Fam. Ins. Grp.*, 665 F. App'x 576, 578 (9th Cir. 2016)

(citations omitted); *Employers' Fire Ins. Co. v. Love It Ice Cream Co.*, 64 Or. App. 784, 791

(1983) ("We hold that . . . an insurer's bad faith refusal to pay policy benefits to its insured

sounds in contract and is not an actionable tort in Oregon."); *Vail v. Country Mut. Ins. Co.*, No.

2:13-cv-02029-SU, 2015 WL 2207952, at *8 (D. Or. May 11, 2015) (explaining that "numerous

Oregon courts, including the Oregon Supreme Court, have explicitly rejected" the argument that

O.R.S. 746.230 creates an independent duty of care from which tort liability could arise);

*Richardson v. Guardian Life Ins. Co. of Am.*, 161 Or. App. 615, 623–24 (1999) (finding the

plaintiff's claim asserting that the defendant violated O.R.S. 746.230 was "not independently

actionable"); *see also Foraker v. USAA Cas. Ins. Co.*, No. 3:14-cv-00087-SI, 2017 WL 3184716,

at *5 (D. Or. July 26, 2017) (noting limited circumstances, "such as when the insurer undertakes

the duty to defend" the insured, where tort liability may arise separate from an insurance

contract).

5 – OPINION AND ORDER

In 2023, the Oregon Supreme Court issued its decision in *Moody v. Community Credit Union*.[2] The parties agree that the framework used by the *Moody* court should control the analysis here, Mot. Summ. J. 8, ECF 40; Resp. 12, ECF 45, and therefore a brief exposition of the *Moody* decision is in order. In *Moody*, the plaintiff, who was the beneficiary of her husband's life insurance policy, brought suit against the insurer when it refused to pay after her husband was accidentally killed during a camping trip. In evaluating whether the plaintiff had alleged facts sufficient to give rise to a legally cognizable negligence claim for emotional distress damages, the court first specifically defined the "legally protected interest" under O.R.S. 746.230 that the plaintiff was asserting gave rise to tort liability:

> The interest that plaintiff seeks to have us recognize as legally protected and sufficient to subject defendant to liability for emotional distress damages is her interest, as the surviving spouse of a deceased breadwinner, in having the insurance company with which she and her husband had contracted for life insurance benefits conduct a reasonable investigation of, and promptly pay, her claim for the promised benefits.

371 Or. at 789–90; *see also id.* at 786–87 (explaining that previous cases had first "carefully frame[d] the contours of that interest" and then "identif[ied] the elements that will allow a [plaintiff] to recover for the negligent infliction of emotional distress, while also providing a limiting principle that will avoid potentially unlimited claims or damages").

Next, the court analyzed whether this "alleged interest is a legally protected interest sufficient to subject defendant to liability for emotional distress damages," noting that historically the court was "hesitant to permit recovery for solely emotional injury but has

---

[2] The degree to which *Moody* has changed the availability of emotional distress damages in cases involving a dispute over insurance coverage has been the subject of a number of decisions from this district and state court. *See Hayter*, 793 F. Supp. 3d at 1292 (collecting federal cases); *see also* Maloney Decl. ISO Mot. Certify Quest. to Oregon Supreme Court, *Oregon Aero Inc. v. Navigators Ins. Co.*, No. 3:21-cv-01178-AN (D. Or.), ECF 79 (collecting state cases).

nevertheless done so in limited circumstances." *Id.* at 790. This hesitancy was in part because

"[i]n contrast to physical harms, emotional harms occur frequently" and that some limit on the

scope of liability beyond mere foreseeability was needed because without it, "permitting

recovery for emotional injuries would create indeterminate and potentially unlimited liability."

*Id.* at 785 (quoting *Philibert*, 360 Or. at 703–04).

The court recognized that it had not "devised a test" for determining whether an interest

is a legally protected interest sufficient to subject a defendant to liability for emotional distress

damages. *Id.* at 790. Instead, the court stated, "we have looked for factors that demonstrate, to

our satisfaction, that we will not be creating indeterminate and potentially unlimited liability, and

that the interest in question is sufficiently important and sufficiently circumscribed to support the

imposition of liability for emotional distress damages." *Id.* (simplified). Doing so, like any aspect

of common law, requires the "application of judgment," and for the court to "proceed

incrementally, looking [to] past decisions and applying similar reasoning to new circumstances."

*Id.* The factors that the court relied on in its analysis include whether "an Oregon statute

indicates the existence of a the alleged legally protected interest,"[3] whether the parties were "in a

relationship . . . that entailed a 'mutual expectation of service and reliance," whether the nature

of plaintiff's alleged injury carried "objective indicators of possibly serious emotional injury,"

and whether the claimed harm was "of sufficient importance as a matter of public policy" to

allow the "recovery of purely emotional injury." 371 Or. at 790–805.

Applying those factors, the court found that the plaintiff had "alleged a legally protected

interest that provides that limiting principle; that is, plaintiff, as the surviving spouse of a

---

[3] Previous Oregon decisions have recognized that other sources of law, including common law
and a court order, "also can be the source of a legally protected interest capable of supporting a
claim for recovery of emotional distress." *Philibert*, 360 Or. at 706.

deceased breadwinner, has a legally protected interest sufficient to support a common-law

negligence claim for emotional distress damages against her husband's life insurer for failure to

reasonably investigate and promptly pay her claim for insurance benefits." *Id.* at 805.

The task here then is to apply the framework described above to plaintiff's claim, with

the first step being to "carefully frame" the contours of plaintiff's alleged legally protected

interest. As might be expected, the parties proffered definition of that interest are somewhat

divergent. Defendant frames the interest as plaintiff's "interest in replacing his personal property

stolen from an offsite location," Def. Reply 4, ECF 51, while plaintiff frames the interest as

"having [defendant] conduct a reasonable investigation and promptly pay his theft claim, without

delays arising from discriminatory treatment[.]" Pl. Resp. 26, ECF 45. Some combination more

accurately captures the essence of plaintiff's claim, and thus the discussion here analyzes

whether plaintiff's interest in having defendant conduct a reasonable investigation and promptly

pay his claim for the theft of personal property, which included numerous suits, shoes, luggage,

and a gaming console, from a storage facility is a legally protected interest that can support a

claim for emotional distress damages.[4]

Plaintiff asserts that the analysis should account for his allegation that defendant

discriminated against him in some way. *See* Resp. 8–10, 12, 13, 15, 21, 23, ECF 45. But there is

no evidence in the record, apart from plaintiff's own testimony that he "believe[d] that [he] was

discriminated against,"[5] to supports his position. Although it is not disputed that plaintiff is a

member of a protected class, there is no evidence of any racially-motivated behavior, such as

statements or slurs, or that similarly situated individuals outside of plaintiff's class were treated

---

[4] *See* Reiner Decl., Ex. 3, ECF 55-3 (plaintiff's inventory list)
[5] Lott Dep. 107, ECF 46-9.

more favorably than him. *See Makhzoomi v. Sw. Airlines Co.*, 419 F. Supp. 3d 1136, 1150 (N.D. Cal. 2019) (finding prima facie case of discrimination where plaintiff was chastised for speaking in "that language" given "the environment," told he was not "getting back onto the airplane," and turned over to law enforcement); *King v. Greyhound Lines, Inc.*, 61 Or. App. 197, 201–03 (1982) (finding the defendant violated Oregon Public Accommodations Act where, among other things, the defendant's employees directed racial slurs at plaintiff); *Williams v. Thant Co.*, No. 3:20-cv-1214-MO, 2004 WL 1397554, at *3 (D. Or. June 22, 2004) (finding genuine issue of material fact existed regarding the defendant's application of a dress code where the defendants allowed non-African Americans into the club even though they were wearing pants at least as baggy as those worn by the plaintiffs); *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1147 (9th Cir. 2006) (finding the plaintiff articulated a prima facie case of discrimination where a predominantly African-American organization was denied the right to contract for use of a ballroom in favor of a "white event"). There is, in short, nothing but plaintiff's own speculation that his race played some part in defendant's investigation or ultimate refusal to pay for his claimed loss, and thus there is no basis to account for any alleged discrimination in evaluating plaintiff's NIED claim here. *See Ofuasia v. Spirit Halloween Superstores, LLC*, No. 3:20-cv-00076-YY, 2021 WL 3783069, at *4 (D. Or. July 21, 2021), *report and recommendation adopted,* No. 1:20-cv-00076-YY, 2021 WL 3779834 (D. Or. Aug. 24, 2021), *aff'd,* No. 21-35783, 2022 WL 15523098 (9th Cir. Oct. 27, 2022) (collecting cases from courts in the Ninth Circuit finding insufficient evidence to support claims of discrimination in various contexts).

The statute at issue in this case, O.R.S. 746.230(1), is the same as the one at issue in *Moody* but that is not sufficient to conclude that plaintiff's NIED claim can survive summary judgment. It is clear from reading *Moody* that the mere existence of O.R.S. 746.230(1) does not

9 – OPINION AND ORDER

establish a legally protected interest that supports a claim for purely emotional harm. Were that

the case, then a substantial portion of the Oregon Supreme Court's analysis, such as whether the

alleged injury carried "objective indicators of possibly serious emotional injury" or was

sufficiently important as a "matter of public policy" would have been unnecessary to the

decision. *See Moody*, 371 Or. at 800–04. Indeed, the closing lines of the *Moody* decision signaled

that the Oregon Supreme Court believed there was something distinct about the plaintiff's claim

that set it apart, even from other cases involving a dispute over insurance c overage:

> We caution that our conclusion here does not make every
> contracting party liable for negligent conduct that causes purely
> psychological damage, nor does it make every statutory violation
> the basis for a common-law negligence claim for emotional
> distress damages. Far from it. Few contracting parties promise to
> provide necessary financial resources on the death of a spouse
> knowing that their obligation to act reasonably in doing so is
> required by statute. And few statutes impose obligations on
> contracting parties designed to protect the parties from the type of
> emotional harm that plaintiff in this case allegedly suffered. Our
> decision in this case is a narrow one that applies and accords with
> the limiting principles that have guided our past decisions and does
> not unfairly expose defendant to liabilities that it could not have
> expected and guarded against.

*Id.* at 805–06. Thus, some other factors apart from the statute itself must indicate the existence of

a sufficient legally protected interest to warrant recovery for purely emotional distress.

Nor is it controlling that the parties here share a similar "relationship of mutual

expectation of service and reliance" that was at issue in *Moody*. The existence of the contractual

insurance relationship was important to the *Moody* court as one way to limit the potential for

"unanticipated and indeterminate liability" because "in such a relationship, the service provider

knows the identity of the person who contracts for or is the named beneficiary of those services

and can be expected to act reasonably with respect to that person." *Id.* at 800–01. That was not,

however, the *Moody* court's only consideration; it specifically stated that "[t]he relationship

between the parties is not . . . determinative" in "deciding whether a plaintiff has a legally

protected interest sufficient to subject a defendant to liability for emotional distress damages."

*Id.* at 803. Instead, there must also be some "other indicators that permitting such recovery will

not impose an unfair burden on defendants," including whether the alleged injury was

accompanied by "objective indicators of possibly serious emotional injury." *Id.* at 803–04.

> The *Moody* court explained how those indicators accompany a life insurance policy:

> > Life insurance is intended to provide peace of mind and necessary
> > resources for a beneficiary, and a life insurer's unreasonable denial
> > of promised benefits can certainly cause the beneficiary serious
> > emotional injury. There are objective indicators of such injury in
> > that the death of a spouse is a significant loss, and that loss is
> > compounded when the death is sudden and the person who loses
> > the spouse is dependent on the spouse for their financial well-
> > being.

*Id.* at 803–04.

In this case, those "objective indicators of possibly serious emotional injury" are missing.

Plaintiff's claimed injury is related to the theft of personal property, including shoes, suits,

luggage, and a gaming console, from a storage facility. This type of loss does not carry with it

the same potentially serious emotional injury as the "significant loss" of the "death of a spouse,"

especially considering that life insurance policies are secured for the beneficiary's "peace of

mind and necessary resources" in the unfortunate event of a "bread-winning" partner's sudden

death. *See Moody*, 371 Or. at 789 (noting the plaintiff alleged "that, as a result of defendant's

negligence, she had fewer financial resources to navigate the loss of a bread-winning spouse and

that she suffered increased emotional distress and anxiety as a result"). Nor does plaintiff's

specific claim here carry with it the same objective indicators of possibly serious emotional

injury as the plaintiff's claim in *Mohammad*, a recent case from this district applying *Moody* to

an emotional distress claim under O.R.S. 746.230 in which the plaintiff's insurance claim

11 – OPINION AND ORDER

involved property damaged during a home invasion burglary. *Mohammad v. Liberty Ins. Corp.*, No. 1:23-cv-000691-CL, 2024 WL 4627462, at *3 (D. Or. Oct. 30, 2024). The alleged intrusion into the sanctity of one's home carries with it a higher risk of emotional harm than the loss of personal items from an off-site storage facility.[6]

The potential for emotional harm here is also not the same as in *Philibert*, a key case upon which *Moody* relied, and one featured in the briefing here. *See* Mot. Summ. J. 14, ECF 40; Resp. 20, ECF 45. The plaintiffs in *Philibert* were eight- and twelve-year-old brothers "who were crossing a street in a crosswalk with the walk signal with their seven-year-old younger brother." 360 Or. at 700.  The defendant drove through the crosswalk, narrowly missing the two older boys but striking the seven-year old who died at the scene. *Id.* The Oregon Supreme Court described the emotional pain caused by "watch[ing] as their younger brother was crushed by a pickup truck" as the "emotional equivalent of a physical injury," and it was "obvious and favored by all ordinary human feelings" that damages for emotional distress should be available in such cases. *Id.* at 707–08. While plaintiff may be correct that *Philibert* did not "creat[e] a standard for the intensity of emotional harm that must accompany all claims for emotional distress," Resp. 20, ECF 45, the case offers a useful data point for understanding and synthesizing the types of

---

[6] The first decision in *Mohammad* cited here resolved a motion to dismiss. The court found that based on the allegations in the complaint, the "emotional distress suffered by a person whose home was invaded and property destroyed," while perhaps potentially "not as grave" as was the case in *Moody*, was sufficient to state a claim for emotional distress damages under O.R.S. 746.230. *Mohammad*, 2024 WL 4627462 at *3. Later, discovery revealed that the plaintiff had inherited the house from her father after he passed away and had never lived at the property; rather, at the time of the incident, she was renting the house to tenants. *Id.*, 2025 WL 975233, at *1 (D. Or. Apr. 1, 2025). At summary judgment, the defendant argued that an "absentee landlord" could not experience the same emotional distress as that experienced by a life insurance beneficiary. *Id.* at *5. The court declined to decide the case on that ground, finding instead that the plaintiff had failed to produce any evidence that she "actually suffered a serious emotional injury as a result of [the defendant's] alleged negligence." *Id.*

cases that involve "objective indicators of possibly serious emotional injury." Other cases

include the disturbance of a spouse's remains, *Hovis v. City of Burns*, 243 Or. 607, 613 (1966),

or a doctor's failure to timely diagnose a child's severely debilitating and ultimately fatal genetic

disorder that in turn led to the parents giving birth to another child with the same disorder,

*Tomlinson v. Metro. Pediatrics, LLC*, 362 Or. 431, 435 (2018). Plaintiff's alleged harm—the loss

of suits, shoes, and a gaming console from a storage unit and his frustration with defendant's

failure to pay his claim—does not carry the "objective" risks of serious emotional harm that

these previous cases do.

Still other cases involve certain invasions of privacy not at issue here. For example, in

*Macca*, one of the cases plaintiff cites, the plaintiff sued the publisher of a phonebook in the

1970's after it wrongly listed her home phone number as the "after hours" number for a florist.

*Macca v. Gen. Tel. Co. of Nw.*, 262 Or. 414, 415 (1972). The plaintiff testified that she received

numerous calls, day-and-night, every day for months, and the Oregon Supreme Court found this

was a private nuisance claim, based on the invasion of plaintiff's "right to enjoy her property

without unreasonable interference," that could support a claim for emotional distress damages.

*Id.* at 416–19; *see also I. K. v. Banana Republic, LLC*, 317 Or. App. 249, 257 (2022) (finding the

plaintiffs had a "legally protected interest in being free from the emotional distress of being

secretly video recorded while using a private employee restroom"). There is no similar allegation

or evidence here.

Plaintiff's citation to *Curtis* is also unavailing. In that case, the plaintiff alleged that he

suffered "permanent psychological damage" after experiencing a claustrophobic episode during

an MRI procedure. He alleged the administering medical providers did not explain the potential

claustrophobic effects of the procedure and allegedly "physically confine[d]" him in the machine

13 – OPINION AND ORDER

by not stopping it after he reported trouble breathing and called for the procedure to end. *Curtis v. MRI Imaging Servs. II*, 148 Or. App. 607, 609–10 (1997). *Curtis* involved a "heightened duty of care," the breach of which itself could support a claim for purely emotional damages, that does not exist here. *See Shin v. Sunriver Preparatory Sch., Inc.*, 199 Or. App. 352, 365 (2005) (explaining *Curtis*). So too is plaintiff's citation to *Williams*, a case in which the plaintiffs produced evidence of a discriminatory housing practice, including an investigation by the Civil Rights Division of the Bureau of Labor during which a representative of the property's landlord stated that Black applicants "could not qualify for tenancy in the apartment because they would be incompatible with" other tenants. *Williams v. Joyce*, 4 Or. App. 482, 490 (1971). As explained above, there is no evidence of discrimination here.

Finally, plaintiff's claim is distinct from the one at issue in *Moody* regarding the significance of the alleged harm "as a matter of public policy." *Moody*, 371 Or. at 804 (quoting *Philibert*, 360 Or. at 705). The *Moody* court emphasized that "[r]equiring reasonable investigation and prompt payment of such proceeds benefits not only those in plaintiff's shoes, but also society at large" because "[w]hen life insurance proceeds enable survivors to obtain basic needs such as food and shelter, the survivors are not dependent on society for those needs." *Id.* Here, there is no allegation, much less any evidence, that plaintiff's loss of personal property, such as suits, shoes, and a gaming console, from a storage facility has any broader societal impact of the kind at issue in *Moody*.

In sum, this case involves both the same statute and a similar "mutual expectation of service and reliance" as *Moody,* but it lacks the "objective indicators of possibly serious emotional injury" and broader societal impact that were present in that case. This analysis, especially in light of the Oregon Supreme Court's direction that courts should be "hesitant" in

creating new bases for claims seeking purely emotional distress damages, favors finding that plaintiff's claimed interest here is not sufficient to sustain such a claim. And that conclusion, like *Moody* itself, is fact-driven. *See Moody*, 371 Or. at 806 (stating the decision was "a narrow one" in part because "[f]ew contracting parties promise to provide necessary financial resources on the death of a spouse knowing that their obligation to act reasonably in doing so is required by statute"). Plaintiff's alleged interest in having defendant conduct a reasonable investigation and promptly pay his claim for the theft of personal property from a storage facility does not carry with it the same risk of creating an emotionally fraught situation as *Moody* or other previous cases that have allowed plaintiffs to seek emotional distress damages. As the *Moody* court explained, there are special considerations when it comes to life insurance that are not the same as those that plaintiff experienced here—there is no indication that the property loss carried something beyond its economic value, such as that which accompanies the death of a bread-winning partner. Nor does this case involve witnessing the tragic death of a family member, or any other indicators that the potential loss of this property would give rise to a "palpable and distinct," *Philibert*, 360 Or. at 707, or "significant" emotional harm, *Moody*, 371 Or. at 804. Without instruction from the Oregon Supreme Court that O.R.S. 746.230 broadly makes emotional distress damages available in any insurance dispute where it is alleged that the defendant has run afoul of those provisions, the determination must be "case-specific" as to whether any dispute under the statute can include a claim for emotional distress damages. *See Curtis*, 148 Or. App. at 621 ("[W]hether an invasion of a protected interest is of a sufficient quality or magnitude to warrant recovery of emotional distress damages seems, almost inevitably, to be case-specific."). For all the reasons explained above, plaintiff cannot recover emotional distress damages based on the specific interest he has proffered here.

15 – OPINION AND ORDER

**ORDER**

Defendant's Motion for Summary Judgment (ECF 40) is granted and plaintiff's Motion

for Partial Summary Judgment (ECF 49) is denied. Defendant's Motion for Partial Summary

judgment on punitive damages (ECF 47) is denied as moot.

DATED February 6, 2026.


<u>    /s/ Youlee Yim You    </u>
Youlee Yim You
United States Magistrate Judge

16 – OPINION AND ORDER